UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| EVA MARIE YEE, on behalf of herself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSURANCE IQ, LLC.,<br><br>Defendant. | Case No. 2:19-cv-02010<br><br>**CLASS ACTION COMPLAINT**<br><br>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C § 227**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THIS ACTION

1. Eva Marie Yee ("Ms. Yee" or "Plaintiff") individually and on behalf of the proposed Class defined below, brings this class action lawsuit for damages resulting from the unlawful actions of Defendant Assurance IQ, LLC. ("Assurance" or "Defendant"). Assurance negligently, knowingly, and/or willfully placed unsolicited automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). Plaintiff alleges as follows upon personal knowledge as to herself and her own experiences and, as to all other matters, upon information and belief including due investigation conducted by her attorneys.

2. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

3. Assurance violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by using an automatic telephone dialing system ("ATDS") to bombard consumers' mobile phones with non-emergency advertising and marketing text messages without prior express written consent.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

5. This Court has personal jurisdiction over Assurance because, (1) during the relevant time period, Assurance's principal place of business was in the State of Washington, (2) Assurance is a Washington limited liability company, and (3) Assurance's nationwide telemarketing campaign, which caused harm to purported class members across the country, emanated from Bellvue, Washington. As such, Assurance has purposefully availed itself of the laws and markets of the State of Washington and this District.

6. Venue is proper in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1391(b) and (c) because Assurance's principal place of business is in Bellevue, Washington. As such, Assurance resides in the Western District of Washington.

## PARTIES

7. Plaintiff is an individual who, at all relevant times, resided in the State of Arizona.

8. Defendant Assurance is a Washington limited liability company organized under the laws of the State of Washington.

9. Assurance is an online insurance brokerage, which offers insurance coverage service options nationwide.

10. Assurance is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.

12. The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

14. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id*. At §§ 12-13; *see also, Mims*, 132 S. Ct. at 744.

15. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions. A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

16. The TCPA makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

17. Text messages are calls and are subject to the TCPA. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

18. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an

artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

19. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

20. To state a claim for a violation of the TCPA, a plaintiff must only show that he or she received a call made using an ATDS or featuring a prerecorded voice; consent is an affirmative defense to liability under the TCPA. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (finding Defendant "did not show a single instance where express consent was given before the call was placed.")

21. The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

22. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(602) 461-XXXX.

//
//
//
//
//
//

23. On or about October 31, 2019, at approximately 9:20AM, Assurance sent Plaintiff two automated text messages to Plaintiff's cellular telephone number. A true and correct copy of the October 31, 2019 text messages sent by Assurance are reproduced below:

[Screenshot of text messages from short code 719-53, dated Thu, Oct 31, 9:20 AM:
"1/2 Assurance has found an auto insurance agent for your request. Please call them at 715-227-0742 to discuss coverage options (Reply STOP
2/2 to Opt-Out)"
"Thanks for joining Assurance Insurance Shopper Alerts. 4 msgs/mo. Reply HELP for help. Reply STOP to cancel. Msg&Data Rates May Apply."]

24. The short code that Defendant used to send the automated text message at issue to Plaintiff—719-53—is used by Assurance to send automated text marketing messages.

25. In its Terms and Conditions, Assurance encourages consumers to use the same short code—719-53—to receive text communications related to "Shopper Alerts" and other marketing messages.[1]

---

[1] https://www.assurance.com/terms-and-conditions (last visited December 3, 2019).

26. "A short code is a number with fewer digits than a phone number to which a text message can be sent. The five-or six-digit numbers are often promoted in traditional and digital advertising. Companies use these codes to bring customers into the branded experience through voting, surveys, sweepstakes, coupon offers, information updates, loyalty programs and alerts."[2]

27. "A dedicated short code is an SMS short code that is used and paid for exclusively by one brand. A dedicated short code is different from a shared short code, because a shared short code is used and paid for by multiple brands."[3]

28. "A vanity short code, is a 5-6 digit phone number that is specifically selected by a brand, rather than selected at random by the Common Short Code Administration (CSCA)."[4]

29. Plaintiff did not give Defendant prior express written consent to send text messages to her cellular telephone number by using an automatic telephone dialing system.

30. Consumers across the country have found themselves inundated with Defendant's unauthorized automated calls and texts, with consumers airing their grievances on the Better Business Bureau website, as highlighted below:

- I started receiving phone calls from this company 11/5/19. I got 3 calls by 8:35am. When I would talk to an agent they would promptly hang up once I ask any questions regarding the company or why they were calling . . . They are harassing me so bad I am considering changing my phone number and have turned my phone off all day which is a major security issue for a female living alone.[5]

---

[2]   https://usshortcodes.com/faqs (last visited December 1, 2019).

[3]   https://usshortcodedirectory.com/faq/what-is-a-dedicated-short-code/ (last visited December 1, 2019).

[4]   https://usshortcodedirectory.com/faq/what-is-a-vanity-short-code/ (last visited December 1, 2019).

[5] *See, e.g.* https://www.bbb.org/us/wa/bellevue/profile/insurance-companies/assurance-1296-1000021736/complaints (last visited December 3, 2019).

- I did not sign up for health insurance quotes. Someone erroneously provided this company with my phone number and I have been inundated with spam calls and text messages from this company on a daily basis. I regularly receive 10-20 calls per day from this company looking for persons other than myself. I have told them on multiple occasions that they have the wrong number and have requested that they stop calling but they refuse. When I block the numbers that this company calls me from, they call me from other numbers. It is harassment and incessant.[6]

- Over the span of 8 minutes, I was called 8 times and texted 2 times by this company claiming I reached out to them about health insurance. I did not! I responded to the text stating to not contact me again and that I did not request anyone to contact me. When I picked up and asked for them to stop calling me, the person would just hang up the phone. This is absolutely ridiculous both because I do not want to be harassed by this company and because this was all occurring at 8:34pm-8:42pm. Then this morning I received another call from them. What's crazy is that I would block each phone number and they would just call me with a different number within a minute.[7]

31. The text messages Assurance sent to Plaintiff and the purported class members consisted of pre-written templates of impersonal text, and were identical to text messages Defendant sent to other consumers.

32. In addition, upon information and belief, the content of the text messages were automatically generated, with no human involvement in the drafting or directing of the messages.

---

[6] *Id.*

[7] *Id.*

33. The language in the messages was automatically generated and inputted into pre-written text template without any actual human intervention in the drafting or sending of the messages; the same exact messages were sent to thousands of other consumers.

34. Upon information and good faith belief, and in light of the nature and character of the text messages at issue—standardized, impersonal, and consistent in structure and format—the advertisement and marketing text messages at issue were sent by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

35. The text messages at issue were sent for non-emergency purposes.

36. Upon information and good faith belief, the text messages at issue were sent voluntarily.

37. Upon information and good faith belief, Defendant had knowledge that an automatic telephone dialing system was used to send the text message at issue.

38. The purpose of the text messages at issue was to advertise and to market Defendant's business.

39. Assurance did not have Plaintiff's prior express consent to place automated text messages to Plaintiff on her cellular telephone.

40. Through the aforementioned conduct, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

**STANDING**

41. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See*,

*Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### The "Injury in Fact" Prong

42. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as articulated in *Spokeo*. *Spokeo*, 136 S.Ct. at 1547.

43. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). In this case, Defendant sent multiple text messages to Plaintiff's cellular telephone, using an ATDS. Such text messages are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and *de facto*.

44. For an injury to be "particularized" means the injury must "affect the Plaintiff in a personal and individual way." *Spokeo, Inc.*, 136 S.Ct. at 1543. In this case, Defendant invaded Plaintiff's privacy and peace by texting her cellular telephone, and did this with the use of an ATDS. Furthermore, Plaintiff was distracted and annoyed by having to take time, opening and reading the text messages. All of these injuries are particularized and specific to Plaintiff, and will be the same injuries suffered by each member of the putative class.

### The "Traceable to the Conduct of Defendant" Prong

45. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant.

46. The above text messages were directly and explicitly linked to Defendant. Defendant's text message identified the Defendant as "Assurance," the party that attempted to solicit business from Plaintiff. This text message is the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show her injuries are traceable to the conduct of Defendant.

*The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

47. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show the injury is likely to be redressed by a favorable judicial opinion.

48. In the present case, Plaintiff's Prayers for Relief include a request for damages for each text message Defendant sent, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff and the members of the putative class.

49. Because all standing requirements of Article III of the U.S. Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons throughout the United States (1) to whom Defendant delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification, and for whom (5) Defendant did not claim to have obtained prior express written consent, or claim to have obtained prior express written consent in the same manner they claim to have obtained prior express written consent from Plaintiff.

51. Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

52. Plaintiff reserves the right to redefine the class and to add subclasses as appropriate based on discovery and specific theories of liability.

53. <u>Numerosity</u>: Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

54. The exact number of the members of the class is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

55. <u>Ascertainability</u>: The members of the class are ascertainable because the class is defined by reference to objective criteria.

56. In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

57. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving text messages to her cellular telephone from an ATDS. Thus her injuries are typical to Class Members. As it did for all members of the class, Defendant used an ATDS to deliver text messages to Plaintiff's cellular telephone number.

58. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedure on the part of Defendant.

59. Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

60. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally texting their cellular phones using an ATDS. Plaintiff and the Class were damaged thereby.

61. <u>Adequacy</u>: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom she is similarly situated, as demonstrated herein. Plaintiff acknowledges that she has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

62. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

63. Plaintiff will vigorously pursue the claims of the members of the class.

64. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling clams involving consumer actions and violations of the TCPA.

65. Plaintiff's counsel will vigorously pursue this matter.

66. Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

67. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

68. <u>Predominance</u>: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

69. <u>Commonality</u>: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

    a. What are Defendant's conduct, pattern, and practice as they pertain to delivering advertisement and telemarketing text messages;

b.  Whether, within the statutory period, Defendant used an ATDS as defined by the TCPA to send text messages to Class Members;

c.  Whether Defendant's conduct violated the TCPA;

d.  Whether Defendant should be enjoined from engaging in such conduct in the future; and

e.  The availability of statutory penalties.

70. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.
- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.
- There will be little difficulty in the management of this action as a class action.

71. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

72. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

73. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**COUNT I**
**Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(b)(1)(A)(iii)**
**(On behalf of Plaintiff and the TCPA Class)**

74. Plaintiff incorporates herein all preceding factual allegations.

75. Defendant and/or its agents placed unsolicited text messages to Plaintiff and the other members of the TCPA Class using an ATDS.

76. Defendant made these text messages *en masse* without the consent of Plaintiff and the other members of the TCPA Class.

77. Defendant's conduct was negligent, or willful or knowing.

78. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the TCPA Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

79. Plaintiff and members of the putative TCPA class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by sending texts, except for emergency purposes, to any cellular telephone numbers using an ATDS in the future.

80. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an ATDS to send advertising and marketing texts to Plaintiff's cellular telephone number without prior express written consent.

81. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiff, and the members of the class, are entitled to damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as a class representative under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing its violative behavior, including continuing to deliver text messages to Plaintiff's cellular telephone number, and to the cellular telephone numbers of the members of the class, without prior express written consent;

f) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B);

g) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3)(C);

h) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: December 9, 2019

By: *s/ Abbas Kazerounian*
Abbas Kazerounian, Esq.
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
Email: ak@kazlg.com

*Counsel for Plaintiff and the Putative Class*